## ROBERT PALMER *vs.* JOHN M. CLARK.

A. and B. agreed in writing that B. should fill a lot of land in a city with gravel in a manner satisfactory to A., and A. should pay him therefor a sum proportionate to the amount of filling, which was "to be measured on the ground by the city engineer, whose measurements shall be conclusive upon the parties." The nature of the soil was such that, by reason of the sinking of the gravel into it, measurements of the filling on the ground were necessarily matters of estimate and judgment, and not of mere computation. The work was done to A.'s satisfaction; and the city engineer made two successive statements of the amount of the filling, the first according to measurements by an assistant, and the second according to those measurements as revised on the ground by himself and certified to be correct. *Held,* in an action in which B. sought to recover from A. the price of the filling calculated according to the certificate, (1) that the engineer might revise and correct his statement within reasonable limits as to time, if he could do so without prejudice to the rights of either party; (2) that the fact that the basis of his certificate was measurements made by an assistant, not in his presence, afforded no ground of avoiding it, if the nature of the duty, and the city engineer's known and usual mode of executing such duties officially, required the employment of assistants; (3) that his certificate could not be impeached for mere errors of judgment on his part, but only for fraud or such mistake as showed that he failed to exercise his judgment on the subject matter; (4) that it was competent for A. to waive any irregularity in the mere details of the mode in which the engineer reached his conclusions; and (5) that the efficacy of such a waiver was not affected by the fact that A. entered into the agreement as an executive officer, for the purpose of executing an order of court to abate a nuisance on the land, and the landowner was ultimately liable for the legitimate expense of the abatement. *Held, also,* that it was not competent for A. to prove what was said by the city engineer to a third person, after the first and before the second statement, "as to the way in which his statement was made, stating that he did not himself make the estimates "; B. not having put in any part of the conversation, and the city engineer not having been examined as a witness.

CONTRACT against the sheriff of Suffolk, to recover compensation for filling territory in the south part of Boston to a higher level. The first count was upon a written agreement signed by the parties, under date of August 7, 1866, expressed to be entered into by the defendant as sheriff of Suffolk, and containing the following stipulations: "Palmer agrees to fill in with clean earth or coarse gravel so much of the territory as the sheriff shall direct to be filled, and that the filling shall be performed in a workmanlike manner, and brought up to the grade known as grade 9, and done in a manner satisfactory to the said sheriff and the city engineer of the city of Boston, and shall be completed to the satisfaction of said sheriff and city engineer within ninety days. The sheriff agrees to pay Palmer for the filling in, at the

rate of $6 for each and every square of earth or gravel put on said territory, the squares and the height of the filling-in to be measured on the ground by said city engineer, whose measure-ments shall be conclusive upon the parties to this agreement."

The count alleged that the territory had been filled by the plaintiff to the satisfaction of the defendant and the city engineer; that the filling had been measured by the latter and the amount of filling "ascertained to be very large, to wit, to be 2402 squares;" and that "the said city engineer has made a return to the defendant of the said number thereof, to wit, of the said 2402 squares, and the said return of the city engineer has been accepted by the defendant," who thereby became liable to pay the plaintiff the contract price for the filling. A count was added for work done and materials furnished.

The answer admitted that the parties entered into the agreement, and that the plaintiff had done some filling in pursuance of it; but denied that the filling had been measured by the city engineer in conformity with the agreement, or that it amounted to 2402 squares; and alleged that the city engineer had made an estimate or statement of measurements showing a much less number of squares.

At the trial in this court, before the chief justice, it appeared that several persons owning land in the south part of Boston had been indicted and convicted in the superior court for maintaining a nuisance by suffering stagnant water to remain thereon; that precepts were issued to the sheriff by the court, directing him to fill the land up to a certain grade; and that in the execution of this duty he entered into the agreement with the plaintiff; that the work was done by Roger Drury, under an arrangement with the plaintiff, and Drury was the real party in interest as plaintiff; and that the defendant had permitted a defence to be made in his name by counsel employed by the indicted persons.

The defendant was called by the plaintiff as a witness, and testified that the plaintiff did the work to his satisfaction, and the city engineer made two statements of measurements and gave them to the defendant, who thereupon made his return to the court; and that he accepted the second statement as sufficient,

by receiving it and making his return accordingly ; that while the work was going on he was frequently present " to see to it ; " that he saw one Chase, an assistant of the city engineer, several times there ; and that by his own direction the ground was marked and staked by assistants of the city engineer.

The plaintiff desired to put in evidence the second statement alone, but was required, upon the defendant's request, to put in the first also, upon the ground that the plaintiff had called upon the defendant for the production of both. The second statement was objected to by the defendant as not in proof of the declaration. and inadmissible as an award, or in the nature of an award, as the power of the engineer as an arbitrator, if he was one, was exhausted with his first statement. Both statements were admitted in evidence ; and the plaintiff then rested his case.

The first statement, dated February 4, 1868, and addressed to the defendant, set forth that " the following is a statement of the amount of filling deposited upon the low district, the owners of which were indicted by the grand jury," and then subjoined a table, giving in one column the names of the owners, and in another the number of squares deposited on their respective lands, amounting in all to 2402 squares.

The second statement, dated March 24, 1868, and addressed to the defendant, stated that the engineer had himself " made examinations of the territory for the purpose of testing the correctness of the return previously made to you, of filling, as estimated in November 1866, by Mr. Chase, one of my assistants," and had also made inquiries of persons familiar with the nature of the soil previous to the filling ; " and the result of these examinations and inquiries is substantially as follows : "

" I have first had Chase's original levels, taken before the filling was done, tested and found them correct. I then tested a number of his grade marks, which were given to fill by, and found them to be correct, at grade 9. I have also had the filled areas tested, and, considering the difficulty of determining at the present time the exact boundary between the filled and unfilled land, the result is quite satisfactory. From the inquiries I have made in regard to the character of the soil before filling, and from my own

observations while the filling was in progress, I am satisfied that it would be impracticable to attempt to determine the amount of filling by digging holes. Take, for instance, a single locality, where Chase estimated a filling of from three to four feet. I myself saw two carts swamped one morning, during a short stay of fifteen minutes, and at the same time I could easily force a stick five feet long down its whole length. I am also informed that during the filling of other portions of the territory it was a common occurrence for a loaded cart to sink to the hubs before it could be dumped. Under such a state of facts, I am forced to the conclusion that very little reliance can be placed on examinations by digging more than a year after the filling had been completed; neither is it matter of surprise that any portion of the filled district should now be found below a grade of 9.

"Having made these examinations and inquiries, I have deemed it proper to verify, as far as possible, the calculations of Chase. I have therefore taken his original levels of the district, his subsequent levels after filling, so far as they are in my possession, and when not, I have assumed the filling to have been to grade 9. I have also used his areas, except where it was possible to verify and correct them. And from these data I have had careful computations made, making the same allowances for settling during the filling. The results of the computations, in some instances, vary considerably from Chase's; but as I have used substantially the same data, and taken great care, I feel more confidence in the following return, which I now make as correct;" and he then subjoined a table similar in form to the table of the first statement, and stating the number of squares filled as 1975.

The defendant objected that it did not appear that the measurements were made by the engineer on the ground, or that he had done what the terms of the contract required of him; that the two statements varied; that there was no evidence that the work was done or the contract performed; and that there was no evidence sufficient in law to sustain the action. But the chief justice declined to take the case from the jury, and ruled that the defendant might waive a literal compliance with the terms of the contract.

The defendant offered the testimony of Horace H. Moses, that he measured the work after it was completed, and made estimate of it, and that in both statements of the city engineer the amount of it was grossly overestimated. The plaintiff objected to this testimony, on the ground that the allegations in the answer did not authorize its admission; and the objection was sustained, whereupon the defendant filed an amendment to his answer, by leave of court and without objection, alleging that the engineer's statements were " so grossly inaccurate as to be fraudulent and void." The plaintiff further objected to the testimony, contending that the engineer's statement was conclusive. The chief justice ruled that it was, in this respect, like the award of an arbitrator, and might be avoided for the same reasons; that under the pleadings, if the defendant could prove that the engineer had been guilty of fraud, his decision would be void; and that on this issue the testimony was admissible. The defendant offered other evidence to corroborate the testimony of Moses; and the plaintiff offered evidence to rebut it.

Moses testified that, after making his examinations and estimate and a plan thereof, he presented them to the city engineer, and represented to him what the true quantity of filling was according to them; and it appeared that this interview between the witness and the engineer took place after the engineer had made his first statement to the defendant, and before he had made his second statement. Moses further testified that the engineer corrected his calculations in consequence of the representations thus made. The defendant then proposed to inquire of the witness what the engineer said to him at the interview, " as to the way in which his statement was made, stating that he did not himself make the estimates." But this inquiry was objected to and excluded.

The defendant testified, in the course of the trial, " that he was informed at the office of the city engineer, before the work was begun, that the assistant, Chase, would superintend the work for the engineer, make the surveys, and fix the grades; and that he afterwards pointed out to Chase the land to be filled, and gave him directions about staking it out and other directions about the work."

Nathaniel H. Crafts, the city engineer, was afterwards called as a witness by the plaintiff, " and among other things was asked whether he did the work in this case by assistants as he did such work generally, or whether he did it differently, and replied that he did it as he did such work generally." This question and answer were admitted, subject to the defendant's objection. He further testified " that he made his returns from the notes of his assistant engineer, Chase, and from subsequent examinations; and that he determined from what Chase did, and from subsequent examinations, and verified his levels more than a year afterwards; that he gave Chase directions beforehand, and was there from time to time ; that the points he verified were outside of the line of filling ; that Chase did not measure in his presence ; and that he himself had no personal knowledge of it, and did not make or see made any such measurements as would enable him to determine the quantity of filling."

The chief justice instructed the jury : " That the action was between the parties as individuals ; that it was immaterial whether the plaintiff expected to do the work himself, or get others to do it ; that the defendant was personally responsible, and the fact that other parties were liable to him did not affect the rights of the plaintiff ; that under the contract it was necessary for the city engineer to do the work in his usual way, and if it was his usual way to employ assistants, and make use of their measurements and estimates, and this was known to the parties, and not objected to, it would be sufficient ; that the defendant might waive a literal compliance with the language of the contract ; and that, if neither he nor his assistant was guilty of fraud, his return was conclusive on the parties ; that in this respect it was like the award of an arbitrator, and could not be set aside for mistakes ; that it was competent to offer evidence of mistakes and errors, but they would not of themselves prove fraud ; that, if the work was done, they could not find for the defendant, unless they should find that the measurements and proceedings of the city engineer were fraudulent ; that that was the point for them to try ; that the only question open was, whether the city engineer acted honestly and in the usual way, and, if he did, his

decision was conclusive about it, whether he made mistakes or not, and whether the mistakes were on one side or the other; that, if the parties agreed that they would accept measurements on the ground, the jury were to judge whether that implied that the city engineer was to leave his other business and give his personal attention to the measurement while the work was going on, or whether he should do it in the usual way in which he does his business, by getting such assistance as he deems proper, and overseeing it; that, under the contract, it was necessary for him to make the measurement and estimate, and if he had not done so, in any just sense, there had been no binding decision by him; that the measurement must be made upon the ground, in contradistinction from a measurement in the pit from which the earth is taken, or in the carts, it having appeared that each of these methods is sometimes adopted; but that the engineer would not be required to leave all his other duties, and attend to the measurements personally, if his usual course was to employ assistants, and this was known and assented to; that the alleged errors in the measurement were proper to be considered as tending to prove fraud; but that, if there was no fraud, the decision of the engineer could not be avoided by the mere proof of errors."

The chief justice also instructed the jury in substantial conformity with the following rulings which were prayed for by the plaintiff:

"That if the jury are satisfied that the defendant understood that the superintendence and measurement of the filling, for which the plaintiff seeks compensation in this action, was to be intrusted by the city engineer to his assistant, Chase, and assented to that arrangement, and knew that the amount returned by the city engineer was ascertained, either wholly or partly, from the measurements and computations of Chase, and accepted and acted upon the return of the city engineer with a knowledge of how the city engineer ascertained the amounts which he returned. then it is immaterial whether, by the provisions of the contract declared on, the city engineer was required to measure the amount of filling in person on the ground, as that was a provision which the defendant might waive.

" That the contract does not require that the entire measurement of the work should be made by the city engineer in person, if it is the known and usual method of the engineer to avail himself of assistance, as was done in this case.

" That if the jury are satisfied that the amounts of filling statements were ascertained in the manner substantially agreed upon by the parties, or that, since they were ascertained and returned, the parties have assented to the measurement as shown by the second statement of the city engineer, then the plaintiff is entitled to a verdict for an amount to be determined by allowing him $6 for every square of filling which by the second statement of the city engineer is found to have been deposited on the lots which the plaintiff was directed by the defendant to fill, unless the jury shall find that the city engineer fraudulently returned a greater amount than he knew to have been deposited, or that the plaintiff, or Drury, by deception or fraud practised upon the engineer, or his assistant, Chase, procured a greater amount to be returned than was in fact deposited.

" That the burden of proof is on the defendant to establish such fraud or deception by a preponderance of evidence.

" That the jury will not be authorized to infer such fraud or deception, from the mere fact that another engineer, or other engineers, have measured the amount of filling with a different result.

" That the jury will not be authorized to find such fraud or deception, although they are satisfied that the city engineer, or his assistant, Chase, either or both, has made an error or mistake in computing the amounts stated in the second statement, unless they are satisfied that such error or mistake was dishonestly or fraudulently committed by the city engineer, or his assistant, or fraudulently procured by the plaintiff, or Drury ; and that the fact that the measurement of another engineer, or other engineers, has shown much smaller amounts of filling to have been deposited, is not evidence of such dishonesty or fraud.

" That, even if the amounts stated in the second return of the city engineer are greatly erroneous, such error is no evidence of fraudulent or dishonest measurement by the city engineer, or

his assistant, Chase, or of any fraud or deception practised by Drury;" to which the chief justice added "that the city engineer must substantially perform the duty he had assumed; and that any misconduct on his part, or gross neglect of his duty, would be evidence of fraud."

The defendant submitted prayers for instructions to the jury, "1. That the plaintiff must show that the work was measured by the city engineer, and the burden of proof is on the plaintiff to show actual measurement;" and "2. That if the city engineer has, by gross negligence, failed to do the duty which he assumed to perform, and in consequence thereof has made gross misstatements and inaccuracies, this will be such misconduct as will avoid his finding or return, although he may not have intended to do any wrong." The first instruction thus prayed for the chief justice adopted and gave, subject to the qualifications mentioned in the rulings already stated. The second he declined to adopt, but ruled "that the engineer could make no valid decision, which would bind the parties, without doing substantially the duty he had assumed to perform; that fraud implied an intention to do wrong; and that any misconduct would be evidence tending to show fraud; but that, if fraud was not proved, his decision would be conclusive." The chief justice also ruled, at the request of the defendant, "that if it appeared that the engineer's assistant had been guilty of fraud in the matter, it would avoid the decision of the engineer."

The jury returned a verdict for the plaintiff under these rulings and instructions, "to all of which the defendant objected so far as they were adverse to him;" and the case was reported for the revision of the full court.

*W. Gaston & W. A. Field,* for the defendant. Under the count on the written contract, the plaintiff must prove that its terms have been complied with; the same is true of the second count, if he sues for money due by a special contract under which nothing remains but that the defendant should pay a stipulated price; and if he sues in *indebitatus assumpsit* for work actually done and materials actually furnished, he must prove the amount of the work and materials, and can only recover for what he actually proves. *Atkins* v. *Barnstable,* 97 Mass. 428.

The real contest at the trial, after the admission of the second statement of the engineer, was, whether that statement was conclusive, in the absence of actual fraud on the part of himself or his assistant, or on the part of the plaintiff or his sub-contractor; or whether any other evidence of the actual amount of filling was admissible.

The written contract could not be varied by evidence of any oral understanding between the parties, at the time it was made, that by the words "the squares and the height of the filling-in to be measured on the ground by said city engineer, whose measurements shall be conclusive upon the parties to this agreement," it was meant that the measurements might be made by another person, whom the city engineer might employ and in a general way superintend; for this varies and contradicts the writing. Nor was evidence of the manner in which the city engineer usually performs city business by assistants and clerks, even if known at the time to the parties, competent to determine the meaning of the words. This was not city business. The words are unambiguous in themselves; and the evidence was not of the practice of engineers generally, nor even of the particular practice of the city engineer when working unofficially for private persons, but of the usage of his office in doing the official work of the city. The effect of admitting it was to import into the contract a different and distinct provision, to wit, that the filling should be measured by persons in the city engineer's office, under such general supervision as the city engineer usually exercises over work done officially for the city, and such as his other duties would permit him, conveniently and consistently with the proper performance of those duties, to exercise in this case. The alleged conclusive character of the measurements rests upon the agreement, if any, that the particular person measuring the filling should determine conclusively between the parties the amount of it. *Thayer* v. *Bacon*, 3 Allen, 163. They do not become so from the fact that they were received by the sheriff, and made the basis of his return. If the return is erroneous, he can be permitted to amend it; and the amount of the filling is strictly no part of his return, the substance of which is, that he has abated the nuisance, pur

suant to the order of the court. The report states that the chief justice instructed the jury, " that, if the parties agreed that they would accept measurements on the ground, the jury were to judge whether that implied that the city engineer was to leave his other business and give his personal attention to the measurement while the work was going on, or whether he should do it in the usual way in which he does his business, by getting such assistance as he deems proper, and overseeing it." But the construction of the contract, which was unambiguous, was for the court and not for the jury; and no evidence of usage merely to vary its meaning was admissible. *Brown* v. *Brown*, 8 Met. 573. *Eaton* v. *Smith*, 20 Pick. 150. *Daniels* v. *Hudson River Insurance Co.* 12 Cush. 416 If there was an established, certain, uniform, reasonable, and legal usage, consistent with the terms of the contract, and known to the parties, in reference to which they contracted, and the contract was not unambiguous and complete in meaning in itself, then, to be sure, the usage might be proved as a part of the actual contract made. But such was not this case, or the usage allowed to be proved in it. Suppose that two persons have a dispute about a drain, and agree to submit it to the determination of the city solicitor ; would a practice in his office that one of his assistants should attend to the questions of law arising in the office relating to drains, which was known to the parties, authorize that assistant to hear and determine the matter, and an award signed by the city solicitor, who had never met the parties or heard the evidence, be valid if drawn up by his assistant who had ? Arbitrators must meet the parties and hear the evidence personally. Judicial duties cannot be discharged by deputy. The award must be the judgment of the arbitrator. *Whitmore* v. *Smith*, 29 L. J. (N. S.) Exch. 402. *Haven* v. *Winnisimmet Co.* 11 Allen, 377. *Lincoln* v. *Taunton Copper Manufacturing Co.* 8 Cush. 415. The words " city engineer," in the contract, are mere *descriptio personœ*. His duties, in regard to measurement, were precisely what those of any other engineer would have been, if another had been agreed upon. He had no power of substitution. And although the performance of the work undoubtedly required the aid of servants, they must have acted

under his direct personal supervision, and he must have had personal knowledge of what was done. The doctrine in regard to the execution of deeds has some analogies. *Gardner* v. *Gardner*, 5 Cush. 483. At all events, he must have exercised such personal supervision as engineers usually do in performing similar work, to make his measurements conclusive.

Nor is the error of the rulings of the court cured by the further ruling "that the city engineer must substantially perform the duty he had assumed;" because the rulings complained of must be taken to have defined what was a substantial performance of that duty. There was no substantial performance by the city engineer. Even in contracts founded on professional skill, the work cannot be intrusted to an agent. For a statement by the court of what in matters of contract is meant by substantial performance or substantial compliance, see *Houghton* v. *Manufacturers' Insurance Co.* 8 Met. 114, 122.

If then the method of doing city work in the city engineer's office, even if known to the parties, did not change the legal effect of the contract in the manner contended for by the plaintiff, it remains to be considered what effect has the fact that it was known to the parties, and not objected to, that Chase was doing the work. Whether the city engineer would undertake to measure the filling, depended entirely upon his own will. Neither party so far agreed with the other that he should measure it, as to be liable to the other, if he failed to do so. If this had been done, then one party, by lying by and making no objection to the manner in which the measurements were made, might be estopped from claiming that the agreement had not been performed. But the question, on the facts, is not one of estoppel. Neither party could control the city engineer. They took what of his time and work he chose to give them. If he did not act at all, the plaintiff could recover for the work actually done, to be established by proof. *Rowe* v. *Williams*, 97 Mass. 163. *Cavanagh* v. *Dooley*, 6 Allen, 66. The contract did not contemplate a hearing before him, and the exhibition of evidence, in which, if a party does not insist upon his technical rights, he may be held to have waived them, because if insisted on the other party may avoid all the

objections. Neither party could have known, except in the most general way, what he personally did about the measurements. They were not to be made in the presence of the parties ; and neither party could know, until his decision, what measurements he had made, as he might make them at any time up to rendering his decision. While either party might waive a literal compliance by the other with the terms of the contract, neither party alone could waive the performance by the engineer of his duty ; and a waiver by both parties of a due performance of his duty by the engineer is not the same thing as an agreement between them that measurements by him not such as the contract required, or that measurements by some other person, should be conclusive. *Thayer* v. *Bacon*, 3 Allen, 163. The utmost that can be contended by the plaintiff is, that it should have been left to the jury to find whether, after making the contract, it was agreed between the parties that the substituted mode of measurement should be conclusive.

If the city engineer was an arbitrator, so constituted by the parties, his power was exhausted when he made his first statement; and the defendant's objection, that the second statement was inadmissible as an award, should have been sustained. *Henfree* v. *Bromley*, 6 East, 309. *Irvine* v. *Elnon*, 8 East, 54. *Ward* v. *Dean*, 3 B. & Ad. 234. A second award could not have been made without the consent of both parties. *Eveleth* v. *Chase*, 17 Mass. 458. And further, the second statement shows on its face that the city engineer did not make the measurements according to the terms of the contract, and if regarded as of the nature of an award is void. *Haven* v. *Winnisimmet Co.* 11 Allen, 377.

In this Commonwealth, gross errors and mistakes, even though honestly made, avoid an award. *Bean* v. *Farnam*, 6 Pick. 269. And in the English courts gross mistakes honestly made may avoid an award, as evidence of judicial, although not of moral misconduct. *In re Hall & Hinds*, 2 Man. & Gr. 846. Not attending personally to the matter submitted to an arbitrator, but employing some one else to do so, is misconduct in him. The leading cases in this Commonwealth on the effect of mistakes of

fact in avoiding an award are, *Boston Water Power Co.* v. *Gray* 6 Met. 131, 169 ; *Strong* v. *Strong*, 9 Cush. 560 ; and *Mickles* v. *Thayer*, 14 Allen, 114. These cases show the correctness of the defendant's second request for instructions; which was denied, and the instruction given that the errors and mistakes must have been dishonestly or fraudulently committed to avoid the award. If there were gross errors and mistakes in the measurements of Chase, which were taken by the city engineer and assumed to be true, and on which, as true, the city engineer exercised his judg ment and made his computations, then the finding of the city engineer may be avoided by proof of these errors and mistakes. The errors of fact on the part of an arbitrator, which cannot be proved for the purpose of avoiding an award, are those honest errors which he may have committed in the exercise of his judg ment. But if he is deceived in what he assumes to be true as the foundations on which his judgment rests, this can be shown. It is, in this case, immaterial whether Chase intended to deceive the city engineer, if in fact he did deceive him. It is only on the theory that Chase was substituted for the city engineer by agree ment of the parties, as the person to determine conclusively the amount of filling, that the honesty or fraud of Chase becomes material.

Finally, the whole of the conversation between Moses and the city engineer should have been admitted ; and all of the plain- tiff's requests for instructions should have been denied.

*L. S. Dabney*, for the plaintiff.

COLT, J. The plaintiff agreed with the defendant, by written contract, to fill with gravel a certain district described in an order of the superior court for the transaction of criminal business, which was issued for the abatement of a nuisance caused by stag nant water. By the terms of the contract, and as a mode of fix ing compensation, the amount of gravel deposited in filling it to a fixed grade was to be measured on the ground by the city en gineer, whose measurements were to be conclusive. After the work was done, the defendant received two certificates or returns of the city engineer, stating the amount, the last of which pur ported to be a revision and correction of the first.

It appeared at the trial, that the certificate of the engineer was made from notes of his assistant, to whom he gave directions beforehand, and from his own subsequent examinations and verifications of the levels; that he was there from time to time, but his assistant made no measurements in his presence, and none were made by him in person; and that this work was done by his assistant, as he did such work generally. The defendant himself testified, that he was informed, before the work was begun, that the assistant would superintend it for the engineer, make the surveys and fix the grades; and that he afterwards pointed out to him the lot to be filled, gave directions about staking it out, and other directions about it, and was there while the work was going on, and had been there to see it frequently. It is apparent also, from the certificate of the engineer, that the nature of the filling was such as to require some allowance for the settling of the original surface while the filling was going on; and that an estimate of quantity, beyond the results attainable by mere measurements and mathematical computation, would be required, in justice to the contractor.

It was objected by the defendant, that the certificate of the engineer could not be conclusive, because the measurements were not made by him in person or in his presence.

The validity of this objection depends upon the fair interpretation of this provision in the contract. The written instrument is indeed the sole repository of the agreement of the parties. Its construction is matter of law for the court. If its terms are used in no peculiar or technical sense, or as applicable to a particular kind of business, they must have the meaning usually attached to the words used. But a true interpretation requires that they should be applied to the subject matter, the situation of the parties, and the usual and known course of business. The common meaning of words and expressions, otherwise clear and unambiguous, may thus be modified by parol, without invasion of the rule which makes the writing the proper and only evidence of the agreement. Thus it was recently held that the word "published," in a written contract relating to advertising charts, had no fixed signification which the court could apply to the contract,

and what was a sufficient publication must be determined by the jury in view of all the facts; *Stoops* v. *Smith*, 100 Mass. 63 that "horn chains" might mean chains made partly of horn and partly of hoof; *Swett* v. *Shumway*, 102 Mass. 365; and that the words "each room," used in an application for insurance, might mean each whole story in a mill, although there might be more than one room in each story; *Daniels* v. *Hudson River Insurance Co.* 12 Cush. 416, 429. In *Herrick* v. *Belknap*, 27 Verm. 673, it was held that a stipulation, in a contract for the construction of a railroad in part, "that the engineer shall be the sole judge of the quality and quantity of the work, and from his decision there shall be no appeal," is binding upon the parties, and constitutes the engineer an arbitrator or umpire between them, and that such stipulation, construed with reference to its subject matter, does not require the estimates to be made by the chief engineer, but has reference as well to the assistant or resident engineer.

The reference in the contract here under consideration is to the city engineer, an officer who is charged with certain defined duties, in the performance of which he usually depends upon the assistance of others. He is referred to, not by name, but by his official title. It is very properly conceded, in the argument of the defendant, that the work required the employment by him of servants and agents; and the question is, how far the work must have been under his direct personal supervision. The measurements are to be made indeed upon the ground, as contradistinguished from measurements in the pit, or in the carts. But it is too narrow an interpretation to insist that they shall be made by the engineer in person, or in his actual presence. If made in the usual manner, by his assistants, according to his directions; if subsequently revised by him, so far as the nature of the work would admit, and made the basis of an estimate of quantity depending not wholly on computation; and if then certified by him to be correct; the jury may properly find that there has been a substantial performance by the city engineer of the duty which by the fair construction of the contract the parties intended. The instructions and rulings of the court upon this point of the case are not open to exception.

It is further strenuously objected, that the rule laid down at the trial as to the weight to be given to the measurements and estimates of the engineer was erroneous. By the agreement, he is made the sole and final judge in a matter where it was evidently considered difficult to attain entire accuracy. This agreement, made by competent parties upon a good consideration, it is the duty of the court to enforce. A reference to a third person to fix by his judgment the price, quantity or quality of material, to make an appraisement of property and the like, especially when such reference is one of the stipulations of a contract founded on other and good considerations, differs in many respects from an ordinary submission to arbitration. It is not revocable. The decision may be made without notice to or hearing of the parties, unless such notice and hearing be required by express provision or reasonable implication; and it may be made upon such principles as the person agreed on may see fit honestly to adopt, or upon such evidence as he may choose to receive. Without doubt he may, within reasonable limits as to time, revise and alter his decision, when it can be done without prejudice to the rights of either party. In one important respect it is to be treated precisely like an award under a submission to arbitration. It cannot be impeached for mistake arising from error in the judgment of the referee, or in drawing conclusions from evidence and observation. To avoid it, the mistake must be one which shows that he was misled, and so far misapprehended the case that he failed to exercise his judgment upon it; as where he is imposed upon by false measures or false weights, or there is obvious error in figures. *Vanderwerker* v. *Vermont Central Railroad Co.* 27 Verm. 125, 137. *Boston Water Power Co.* v. *Gray*, 6 Met. 131, 169. Fraud practised upon him, or by him, will of course defeat it. *Smith* v. *Boston, Concord & Montreal Railroad Co.* 36 N. H. 458, 490. *Mickles* v. *Thayer*, 14 Allen, 114.

The instructions upon this point, as we understand them, and as they must have been understood by the jury, in their application to the facts presented in evidence, and to the points made at the trial, were consistent with the rules and distinctions here stated. It is true, the jury were told that the return of the en-

gineer, if neither he nor his assistant was guilty of fraud, could not be set aside for mistakes; but we cannot see, from the report, that this was not sufficiently accurate to meet the exigencies of the case. It would seem that the alleged mistake was wholly in the over-estimate of the work by the engineer, and was an error of judgment only. The case did not turn upon the distinctions indicated.

The principal objection remaining to be considered arises also, as we think, from an erroneous interpretation of the ruling. It is urgently insisted, that, while either party might waive a literal compliance with the terms of the contract, neither party could alone waive the performance of his duty by the engineer, so as to substitute in his place another person, whose measurements should be conclusive. And this is true. But the correctness of the ruling, as applied to the facts here, and as connected with the other instructions, is not affected by the proposition. The whole case proceeded upon the theory that it was the estimate of the city engineer which was or was not conclusive. The evidence did not show an attempt on the part of the defendant to substitute any one in his place. On the contrary, the defendant accepted and acted upon his report. No particular instructions were asked upon the distinction now taken; and the jury in fact found, under the instructions which were given, that the engineer substantially performed the duty assumed. It is plain that the waiver, contemplated in the ruling complained of, was not a waiver of the substantial performance of the duty imposed on the engineer, and the substitution of another in his place, but a waiver which had reference to the details of the mode in which he reached the result through the assistance of another. Thus construed, we cannot see that it injured the defendant. The defendant is to be treated as the real and only party in interest; his acts and admissions, whether by express declarations or implied from conduct, are to have full effect in favor of the plaintiff; and it makes no difference that he was acting under the order of the court, in his official capacity, and has the right to look to others for indemnity.

Upon the whole, we cannot see in the instructions and rulings given, or in those refused, any reason for disturbing this verdict.

The conversation between Crafts and the witness Moses was properly excluded. The plaintiff put no part of it in, and Crafts had not then been examined. *Judgment on the verdict.*