38  286
89  500

## MITCHELL & SEXTON v. KAVANAGH.

### I. PER MILLER, CH. J.

**Verdict:** EVIDENCE NOT SUFFICIENT TO SUSTAIN. The evidence is discussed and shown to be insufficient to sustain the verdict.

### II. PER COLE, J., DAY AND BECK, JJ., CONCURRING.

2. **Contract:** ENGINEER'S ESTIMATES. Under a contract for grading a railroad stipulating that the compensation is "to be paid upon the engineer's estimates," such estimates are conclusive upon the parties where an honest discretion has been exercised and no fraud appears.

3. **Practice:** PLEADING: EVIDENCE. In the absence both of a pleading and of proof to sustain the only grounds upon which plaintiff could recover, a judgment in his favor will be reversed.

*Appeal from Polk Circuit Court.*

FRIDAY, APRIL 24.

This action is brought to recover an alleged balance due from the defendant, the chief contractor for the construction of a portion of the Des Moines, Indianola & Missouri Railroad, to the plaintiffs who were sub-contractors, by written agreement for the grading of part of said road from station 240 to 270, and by subsequent parol agreement for the grading of the road from section 270 to 271, at the same price and on the same terms as expressed in the written contract. Jury trial. Verdict and judgment for plaintiffs. Defendant appeals.

Seward Smith, for appellant.

McHenry & Bowen, for appellees.

MILLER, CH. J.—The written contract provides that Mitchell & Sexton agree to do the grading on "the Des Moines & Indianola Railroad from stake No. 240 to stake No. 270 at the agreed price of twenty cents per cubic yard, excavation measurment, to be paid upon engineer's estimates, the same as upon the said Kavanagh's contract," &c. It was subsequently orally agreed that plaintiffs should grade from the stake last named to stake 271, for the same price and on the same terms as stated in the written contract.

It is agreed and admitted that the plaintiffs performed the work as they agreed, that the Engineer of the Railroad Company estimated the amount of work so done and that the defendant settled with and paid plaintiffs therefor in full. It is claimed by plaintiffs that such settlement was not a final one, that the estimates of the Engineer on which it was based were incorrect, that the work actually done by them was greatly in excess of such estimates, and for which they seek compensation in this action.

Under this contract the estimates of the defendant's engineer are to be taken, between these parties, as at least *paima facie*

1. VERDICT: evidence not sufficient to sustain.

correct, and the burden of proff is on the plaintiffs to show them to be otherwise. *Memphis R'y Co. v. Wilcox*, 48 Penn. St. 161; see, also, *Herrick v. Vt. Cent. R'y*, 27 V., 673; *Alton R'y v. Northcott*, 15 Ill., 49; *Mansfield & Sandusky R'y v. Veeder*, 17 Ohio R., 385; *Commonwealth v. Clarkson*, 3 Penn. St., 277.

The plaintiffs undertook to show the incorrectness of the engineer's estimates by one B. Callan, who testifies that he was a surveyor and engineer by profession. He shows by his testimony that some time after the work was completed he called at the office of the chief engineer of the railroad company, where he obtained from that officer certain figures from which, with some measurements made by himself, he made an estimate of the work done by the plaintiffs on the sections included in their contract, which shows a large excess of excavation over the engineer's estimates. It is evident that the verdict of the jury is based upon Callan's calculation of the amount of work done by the plaintiffs. Appellant insists that the verdict is not sustained by sufficient evidence. In this I feel bound to concur. It seems patent that the verdict is not supported by sufficient evidence. In the first place, this witness, Callan, shows by his own testimony that he did not have sufficient data upon which, with only some five or six actual measurements made by him, to make a correct estimate of the work actually done. He also shows by his testimony that he found the figures which he obtained of the chief engineer, as far as they went, to be correct. It is also shown that the further data requisite to a correct estimate of the grading was in the possession of the engineer of the defendant who made the estimates at the time of making the same.

*Secondly.* Callan shows by his testimony that he did not measure any *excavations*, but took the figures of the engineer furnished him and made some intermediate measurements of embankments, from all of which he computed the number of cubic yards in the embankments, and then added ten per cent. to this amount. The contract provides for "excavation measurement." In the absence of any custom or usage as to the mode or manner of making this measurement, it is plain

that it is done by measuring the excavation. If these terms have any technical meaning, they may be explained; or if there was any usage or custom as to the manner of obtaining this "excavation measurement," to which it might fairly be inferred the parties had reference in making their contract, such custom or usage could have been shown. But no attempt was made to show, nor is it claimed that these words have any technical or peculiar meaning as they are used in this contract; nor is there sufficient evidence of any custom or usage respecting the mode of obtaining "excavation measurement." This witness testifies, in substance, that there is a shrinkage of ten per cent. in the removal of earth of the character here used, from an excavation to an embankment, that 100 cubic yards of excavation will only make 90 cubic yards of fill, and hence when the embankment is measured ten per cent. should be added to make the amount of excavation measurement. One other witness testifies that he has known contractors to admit this mode of measurement. But the evidence falls far short of showing that there was any usage or custom among engineers to make or ascertain by "excavation measurement" the number of cubic yards of earth moved in grading a railroad track, in the manner the witness Callan did it.

The testimony of the engineer who made the estimates under the contract shows that in making the estimates he measured the excavations, and allowed the plaintiffs pay for the work thus shown to have been done. He further testifies that he also measured the embankments, and for the excess found in the embankments over the excavations, he allowed the plaintiff pay for that also. This method of measurement conforms to the language of the contract, while that adopted by the witness Callan does not. There is nothing to show that the engineer was mistaken in any of his computations.

*Thirdly.* It was admitted that, at the time of making the contract, Sexton alone had already done grading between stations 241 and 271 to the amount of 3071 cubic yards. Now the witness Callan estimated the total of the work done between these stations, added ten per cent. thereto, and then

deducted only these 3071 cubic yards done by Sexton, without the ten per cent. previously added thereto, thus charging the defendant with all the work done by the plaintiffs, with ten per cent. added, and also with ten per cent. on 3071. cubic yards of grading done by Sexton alone. In my opinion the judgment should be

REVERSED.

COLE, J.—The other members of the court very readily concur in the conclusion reached by the Chief Justice in the foregoing opinion, but prefer to rest that conclusion upon another basis.

The contract sued upon is set out in the petition, and states that the plaintiffs agree to do the grading "from stake No.

2. CONTRACT: 240 to stake No. 270, at the agreed price of twenty
engineer's es-
timates.            cents per cubic yard, excavation measurement, to be paid upon engineer's estimates, the same as upon the said Kavanagh's contract." The plaintiff, Mitchell, testifies that, "we settled up and he paid us for the amount of grading that the engineers of the road has estimated—that their estimate amounted to." The evidence of each party shows, and that without any disagreement, that the engineer of the road had made estimates of the work done, and that the plaintiffs had been fully paid for their work "upon the engineer's estimates, the same as upon the said Kavanagh's contract."

What is the effect of the agreement by plaintiffs that they are "to be paid upon engineer's estimates?" In *Easton et al., v. The Penn. & Ohio Canal Co.*, 13th Ohio, 79, the contract provided that the "engineer shall estimate the value of the work done and upon his certificate" payment should be made, etc.; and in a subsequent part of the contract "it is mutually agreed that the decision of the said engineer shall be final and conclusive, in any dispute which may arise between the parties." In deciding the case the court said, per WOOD, J., "the engineer is the umpire between the parties. His determination ends the contract, and exempts the company from its obligations. The agreements of the parties are the law by which their rights are to be determined, and I am

extremely doubtful, at least, whether any court can legitimately interfere and upset their arrangements, when an honest discretion has been exercised—where neither fraud nor circumvention has intervened." Afterwards, the same court, in the case of *The M. & S. R. Co. v. Veeder & Co.*, 17 Ohio, 385, where the contract simply provided that "the engineer of said company shall estimate all the work which may be completed by said second party under this agreement every ninety days, until the entire work is completed," used the following language, per BIRCHARD, C. J: "The contract itself is drawn with less precision than most contracts for labor upon public works of the state which have fallen under my observation. Many, indeed most that I have seen, contain an agreement that the decision of the engineer shall be final and conclusive in any dispute which may arise between the parties. Such was the contract between *Easton v. The Penn. & Ohio Canal Co.*, 13 Ohio, 79. With such a stipulation, there would be very little room to doubt the conclusiveness of the decision fairly made by the chosen umpire of the parties. It could not or ought not to be relieved against, upon any principle more loose than the rule given to the special master as his guide, by the court of common pleas, to-wit: 'The estimates of the company's engineer as to the quantity and quality of the work is conclusive upon the parties, unless fraud be shown, or mistake, or undue influence, or want of good faith, such as is the subject of relief by the ordinary principles of chancery.' But it is urged strongly that the terms of the engagement entered into by the respondents do by no means bind them so rigidly. The question to be decided is one that ought to be so viewed by a court of equity as to accomplish the intentions of the parties. They are in a court of equity, and each seeks to stand upon his equitable rights, as they are fixed and controlled by the terms and spirit of their contract. The last clause of the second article of the agreement provides that in cases where the said second party may be obliged to excavate fast rock, shale rock, or hard pan, the additional compensation is to be determined by the said engineer.' This, as has been already said, does

not in terms make the decision final; yet the force of the language is such as, in our estimation, to leave no doubt .that the parties understood that they were both agreeing to abide his decision. If we are right in this particular, it would follow that his opinion should be conclusive, unless susceptible of being relieved against for some of the causes specified in the order of reference set out above."

We have made these extracts more extended than usual, because they are fair exemplars of the general course of decisions upon the same question, and set forth with clearness the reasons upon which they rest. The following cases fully support the same doctrine: *The Board of Trustees etc. v. Lynch*, 10 Ill. Rep. (5 Gilm.), 521; *McAvoy v. Long et al.*, 13 Ills., 147; *The Alton etc. R. Co., v. Northcott*, 15 Ills., 49; (see also as bearing remotely, *Hennessey v. Farrell et al.*, 4 Cush., 267); *The Del. & Hud. C. Co. v. Dubois*, 15 Wend., 87; *Smith v. Briggs*, 3 Denio, 73; *Smith v. Brady*, 17 N. Y., 173; *Butler v. Tucker*, 24 Wend., 447; *The U. S. v. Robeson*, 9 Peters, 319; *Mills v. Weeks,* 21 Ills., 561, (*i. e.*) 570; *Mickles v. Thayer*, 14 Allen, 114; *Boston Water Power Co. v. Gray*, 6 Met., 131 (*i. e.*) 169; *Vanderwerker v. Vermont Cent. R. Co.*, 27 Vermont, 125 (*i. e.*) 137; *Smith v. The B. C. & M. R. Co.*, 36 N. H. Rep., 458 (*i. e.*) 490; *Palmer v. Clark*, 106 Mass., 373 (*i. e.*) 389; *Commonwealth v. Clarkson*, 3 Penn. St., 277, and very many other cases.

Since, therefore, the plaintiffs concede that they have been fully paid for their work upon and according to the engineer's estimates, and there being a total absence of pleading as well as proof, tending to show either fraud, mistake, undue influence, or want of good faith, such as would entitle the plaintiffs to relief upon the principles of equity, it follows that the judgment must be

REVERSED.

After the foregoing opinions were filed, the counsel for appellees presented a petition for a rehearing, evincing much of earnestness and ability. The manifest misunderstanding of the real basis of the two opinions before announced, seems

to call for a brief re-statement of it. The opinion by MILLER, CH. J., holds that upon the hypothesis that by the contract the measurement by the engineer in charge was only *prima facie* evidence of the true measurement, the evidence does not support the verdict. While the opinion by COLE, J., holds that by the contract the measurement of the engineer in charge was conclusive of the true measurement, in the absence of proof of either fraud, mistake, undue influence, or want of good faith, such as would entitle the plaintiff to relief upon equitable principles; and since there was no such proof in this case, the evidence does not support the verdict. All the judges agree in the conclusion that the evidence does not support the verdict. The Chief Justice, upon the theory that the measurement by the engineer in charge is only *prima facie* evidence, and the other judges upon the theory that such measurement is conclusive. Each opinion is founded upon the only question made and discussed by counsel in the case, to-wit: that the verdict is contrary to the evidence. The petition for a rehearing is overruled, and the judgment is

REVERSED.