JEREMIAH J. HURLEY *vs.* CITY OF BOSTON & others.

Suffolk. December 7, 1922. — April 12, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Contract*, Construction, Building contract for construction of public work, Performance and breach. *Architect. Boston.*

A general contract with the city of Boston for the erection of a school house provided that the work was to be brought to "entire completion" before June 10, 1918, and that "'Entire completion,' as herein used, shall be construed to mean the completion of all the work as called for by these specifications and the contract executed in accordance herewith, and the date when such completion takes place shall be decided by the Architect." The architect decided that the work was completed on August 8, 1919, and the board of school house commissioners on that date voted to "accept finally the . . . school as of this date." The general contractor had given a surety company bond to the city conditioned upon the general contractor furnishing and doing everything required by his contract and paying for all labor performed and furnished and material used "in the carrying out of said contract." More than sixty days after August 8, 1919, but less than sixty days after November 28, 1919, certain subcontractors filed claims purporting to be filed under St. 1909, c. 514, § 22. In a suit in equity to enforce such claims, a master found that the work was not entirely completed until November 28, 1919, because of uncompleted work under heating, plumbing and ventilating items of the contract; that neither the architect nor the chief clerk of works considered the inspection of the work done under these particular items within their respective duties; that the architect in making his decision as to the completed work, so-far as these items were con-

cerned, "relied on the supervision of such work and approval thereof by the city supervisors as reported to him" by the chief clerk of works, and that no personal inspection of them was made by him or in his behalf. The master's report was confirmed. *Held,* that

(1) The heating, plumbing and ventilating items were included in the contract and it was the architect's duty to exercise his judgment as to whether they were completed before deciding that the work was entirely completed;

(2) The architect failed to exercise any judgment whatever as to whether the items of heating, plumbing and ventilating were completed;

(3) While the subcontractors would have been bound by the decision of the architect so far as he actually formed a judgment in good faith, they were not bound by his decision in the circumstances because there had not been in any real sense an exercise of judgment on his part in deciding that the work was completed on August 8, 1919;

(4) The claims of the subcontractors were filed within the time required by the statute.

BILL IN EQUITY, filed in the Superior Court on January 12, 1920, by Jeremiah J. Hurley, doing business as J. J. Hurley and Company, against the city of Boston, the Whiton and Haynes Company, and the National Surety Company, seeking the allowance and payment of a claim of the plaintiff as a subcontractor under the defendant, Whiton and Haynes Company, in the erection for the city of Boston of a school house in the Dorchester district known as the Sarah Greenwood School, and to have any cash or other security which was provided by the city of Boston under St. 1909, c. 514, § 23, applied to payment of the claim.

After the filing of the bill the following parties intervened as claimants: Sears-Cook Corporation; Joseph P. O'Connell, doing business as J. P. O'Connell and Company; Stephen T. Keith and George A. Craffey, partners doing business under the firm name of Keith and Craffey; Francis D. Kirby, doing business under the name of William B. Reardon and Company; Charles E. Bradley; Arthur L. Smith, doing business under the name of A. L. Smith Iron Works; William S. Hall and Howard B. Lovell, partners doing business under the firm name of Lovell and Hall; Eagle Cornice and Skylight Works, a corporation.

In the Superior Court, the suit was referred to a master. Material facts found by the master are described in the opinion. The suit then was heard by *Sanderson,* J., by whose order an interlocutory decree confirming the master's report was entered and the suit then was reserved for determination by this court upon the pleadings, the master's report, the interlocutory decree confirming

the master's report, a memorandum of rulings and findings made by the judge and all questions of law, such decree to be entered as justice and equity might require.

*J. E. McConnell*, for the defendant surety company.

*M. Witte & F. L. Norton*, (*W. J. Shanahan* with them,) for the plaintiff and intervenors.

CARROLL, J. The question in this case is whether the plaintiff and the intervenors, who were subcontractors in the erection of a school house called the Sarah Greenwood School, for the city of Boston, have filed a sworn statement of their claims under St. 1909, c. 514, § 22, within sixty days after the completion of the work. It was agreed that the Eagle Cornice and Skylight Works did not file its claim within the time required by the statute. The general contractor was the defendant Whiton and Haynes Company. The defendant National Surety Company gave a bond to the city of Boston upon the condition that "if the party to the contract hereto annexed, other than the City, shall faithfully furnish and do everything therein required of the party on its part to be kept and performed, and shall also pay for all labor performed or furnished, and for all material used in the carrying out of said contract, then this obligation shall become and be null and void; otherwise it shall be and remain in full force and virtue." The contract annexed to the bond was the contract between the city of Boston and the general contractor. It stipulated that the work was to be brought to entire completion within thirteen months, that is, before June 10, 1918. "'Entire completion,' as herein used, shall be construed to mean the completion of all the work as called for by these specifications and the contract executed in accordance herewith, and the date when such completion takes place shall be decided by the Architect." The architect decided that the work was completed August 8, 1919. If the plaintiffs are bound by this decision, their claims were filed too late, as they were not filed within sixty days after August 8, 1919, and their lien is lost. The master, however, found that the work was not completed until November 28, 1919, and if this is the decisive date, then the claims were filed within the time required by the statute.

The board of school house commissioners, the board authorized to erect public school buildings in the city of Boston, on August 8, 1919, voted to "accept finally the . . . (Sarah Greenwood) school

as of this date." The master found that the architect's decision that the work was completed on August 8, 1919, was wrong in fact; and that his error was due to ignorance concerning the conditions of certain portions of the work and to his misconception of his duties respecting the inspection and approval of such parts of the work.

The board of school commissioners employed a chief clerk of works who acted as the representative of the board during the construction of the building. He had under him a clerk of works. The board also employed an electrical engineer and an assistant, a supervisor of heating and ventilating, and a supervisor of plumbing, who were required to check up the work in their respective branches and report to the chief clerk of works when requested. On July 31, 1919, the architect and chief clerk of works, after inspecting the building, drew up a list of unfinished work. The list included fifty-five items. On the same date the architect notified the general contractor that these items were not completed and informed it that there were still some items in the "heating, lighting and plumbing contracts, and trust that you will attend to those matters promptly and make the necessary repairs and clean up the entire contract." The heating, plumbing and ventilating items were not included in the list of the fifty-five items of July 31, because neither the architect nor the chief clerk of works considered the inspection of the work done under these particular contracts within their respective duties. The architect saw that this particular work was going on but did not examine it "in the sense of inspection." On August 7, or August 8, there was an examination of the building by two members of the board, its engineer, one of the architects, a representative of the general contractor and the chief clerk of works. The architect had with him the list of unfinished work of July 31. He decided that all these items had been completed and so reported to the general contractor and the chief clerk, who later reported the decision to the board; and shortly after this the board passed the vote to which reference has been made. On the day of this examination the architect asked the chief clerk of works if the work which the school house commission had charge of, and which he (the architect) claimed that he did not have to inspect, had been approved by the inspectors in such departments, said work being the plumbing,

heating, ventilating and electrical work. The chief clerk replied that the inspectors had found everything satisfactory and stated that the items listed July 31 had been properly attended to. The architect then said he was satisfied, and if the board was satisfied that he would accept the building as completed.

At this time there was work included in the heating, ventilating, plumbing and electrical contracts which was unfinished. This work the architect did not deem it his duty to inspect and did not in fact inspect it, and "relied on the supervision of such work and approval thereof by the city supervisors as reported to him" by the chief clerk of works. The master found that the architect was wrong in assuming that he had no duty to inspect the plumbing, electrical, heating and ventilating work; that he was paid by the city to inspect this work, and that because of ignorance or misconception of his duties, he neglected to make a personal inspection; that he made no inspection after August 8, 1919, although he knew that work required by the contract was being performed after that date.

The plaintiff and intervenors were required to file a statement of their claim within sixty days after the completion of their work, in order to avail themselves of the statutory remedy. The contract provided that the date of the completion of the building should be decided by the architect. The parties left this matter to his determination. If he acted in good faith and used his best judgment, his determination was final. The parties were bound by his decision that the work was completed on August 8, if he honestly decided the matter, although as matter of fact it was not completed until a later date, because they elected to take his judgment and be bound by his decision, for it was a part of their contract that the architect was to decide the question of the date of completion of the work. *Palmer* v. *Clark*, 106 Mass. 373. *Hebert* v. *Dewey*, 191 Mass. 403. *Handy* v. *Bliss*, 204 Mass. 513. *Marsch* v. *Southern New England Railroad*, 230 Mass. 483. The finding of the architect cannot be impeached merely because he was careless in his inspection, or mistaken in his conclusion. His judgment may have been wrong, and a more careful examination might have disclosed his error. As long as he acts fairly and in good faith, is not the victim of the fraud of others, and exercises his own honest judgment, the finding, or decision, is binding.

*Marsch* v. *Southern New England Railroad, supra. Clark* v. *New England Telephone & Telegraph Co.* 229 Mass. 1.

The master does not expressly find that the architect acted in bad faith, but does find that he failed to make any examination or inspection of the electrical, heating, ventilating and plumbing work on the building, although the inspection of this work was a part of his duty; that he failed to exercise any judgment in passing on this work, in making the decision required of him, and did not, so far as any inspection of his own was concerned, or performed under his direction, take this work into account in deciding that the work was completed August 8. He relied entirely on the report of the chief clerk that the inspectors appointed by the city were satisfied with this part of the work. The parties were entitled to the best judgment of the architect, based on his own inspection of the progress of the work. They were to be bound by his decision and not by the decision of the supervisors employed by the city. He could, of course, rely on his assistants acting under his direction, in determining the date when the contract was finished; or, as was said in *Palmer* v. *Clark, supra,* at page 389, the decision "may be made upon such principles as the person agreed on may see fit honestly to adopt, or upon such evidence as he may choose to receive." The determination of the architect, however, may be avoided where "the mistake . . . [is] one which shows that he was misled, and so far misapprehended the case that he failed to exercise his judgment upon it." See *Bean* v. *Farnham,* 6 Pick. 269, 273; and in this connection see *Morgan* v. *Murdough,* 216 Mass. 502, 504. If the ventilating, the plumbing, the heating and electrical work done upon the building were never in fact inspected by the architect, and did not enter into his decision, and the inspection of this work was left entirely to supervisors hired by the board, and he considered the inspection of this part of the work outside his duty, then he did not exercise his honest judgment in passing upon the question and in deciding that the work was completed on a certain date. The heating and other work which were a part of the contract, should have been passed upon by him before deciding the date of completion of the entire work. The decision was not the decision of the architect; it was not such a decision as would bind the parties. The architect "was misled, and so far misapprehended the case that he failed to

exercise his judgment upon it." *Palmer* v. *Clark, supra,* page 389.

It follows that the claims of all the plaintiffs, except the Eagle Cornice and Skylight Works, were filed within the time required by the statute, and are established for the amount as found by the master, with interest for the plaintiff Jeremiah J. Hurley, from the time of the filing of the bill, and with interest to the intervening petitioners from the date when each petition was filed; *McClintic-Marshall Co.* v. *New Bedford,* 239 Mass. 216, 225; except that in the case of Sears-Cook Corporation and Joseph P. O'Connell interest is to be allowed from the date of the demand, as found by the master.

*So ordered.*