ACMAT CORPORATION *vs.* DANIEL O'CONNELL'S SONS, INC., & another; CITY OF SPRINGFIELD, third-party defendant.

Suffolk.  May 13, 1983. — November 1, 1983.

Present: PERRETTA, CUTTER, & SMITH, JJ.

*Contract,* Building contract.

An architect's refusal to approve a subcontractor's proposed use of an acoustical coating material different from that specified in a building contract was within the scope of the architect's authority under the contract, and, in the circumstances, was not arbitrary or capricious. [48-49]

Where a subcontractor was aware that the temperature at a construction site was too low for proper application of a coating material, but continued to install the material under inappropriate conditions rather than halting work, the subcontractor was liable to the contractor for the cost of repairing defects caused by application of the coating material at low temperatures, even though the building contract in question made the contractor responsible for maintaining proper site conditions, including adequate heat. [49-50]

CIVIL ACTION commenced in the Superior Court on May 19, 1975.

The case was heard by *Garrity,* J.

*Harry P. Carroll,* Deputy City Solicitor, for the city of Springfield.

*Robert J. Sherer* (*Susan J. Baronoff* with him) for Acmat Corporation.

*Herbert D. Friedman* for Daniel O'Connell's Sons, Inc., & another.

PERRETTA, J.  The defendant general contractor, Daniel O'Connell's Sons, Inc. (O'Connell), entered into a contract with the third-party defendant, city of Springfield (city), for the construction of a school.  The plaintiff subcontractor, Acmat Corporation (Acmat), was to perform the special

interior coating work, which it proposed to do with Spraydon, an acoustical coating material different from that called for in the contract specifications, namely Cafco Soundshield. The architect, however, decided that Spraydon was not the equal of Cafco, and he would not approve its use. Acmat performed its work using Cafco and brought suit against O'Connell, seeking reimbursement for the extra cost thereby incurred. O'Connell responded by filing a third-party complaint against the city, alleging that the architect's action was arbitrary and wrong. On a counterclaim against O'Connell the city sought damages for Acmat's allegedly defective workmanship.[1] This counterclaim prompted O'Connell to bring a counterclaim against Acmat for the recovery of any damages which might be paid by O'Connell to the city.

Acmat and O'Connell, after a trial without jury before a Superior Court judge, prevailed on their complaints concerning the additional cost occasioned by the use of Cafco, and the city and O'Connell were successful on their counterclaims in connection with Acmat's workmanship. On these cross appeals we conclude that the architect acted within the scope of his authority under the contract and that the amount of damages due the city for defective work must be recalculated. We vacate the judgment and remand the matter for further proceedings and the entry of a judgment consistent with this opinion.

1. *Acmat's Complaint.*

The portion of the specifications pertaining to the work here in dispute required use of material described as follows: "Special interior coating shall be Cafco Soundshield 85 . . . as manufactured by United States Mineral Products Co. or approved equal. (1) N.R.C. [noise reduction coefficient] rating 0.45 at 3/8″ thickness over solid backing in accord with [American Society of Testing Material] C-423."

---

[1] The contract provides that "[t]he Contractor shall be fully responsible to the Owner for the acts and omissions of his subcontractors . . . as he is for the acts and omissions of persons directly employed by him."

The specifications make no reference to the whiteness, percentage of light reflectance, or hardness or density of the product to be used on the coating work. The specifications, however, do require that a sample of any proposed material be applied over concrete on the job site for the architect's approval of color, texture, and thickness.

The general conditions of the contract provide that, when a material is identified in the specifications by reference to a manufacturer's name or trade name, "it is intended merely to establish a standard; and, any material of other manufacturers . . . which will perform adequately the duties imposed by the general design will be considered equally acceptable provided the material . . . so proposed is, *in the opinion of the Architect* . . . of equal substance and function" (emphasis supplied). See G. L. c. 30, § 39M(*b*).[2] The scope of the architect's authority is also set out in the general conditions: "The Architect . . . shall determine the amount, acceptability, and fitness of the several kinds of work and materials which are to be paid for under this contract and shall decide all questions which may arise in relation to said work and the construction thereof." Except as to matters not here relevant, the architect's "estimate and decisions shall be final and conclusive."

Certain relevant facts are set out in the trial judge's subsidiary findings. Cafco is a hard, cementitious, dry material and is primarily white in color. It has a lime component which provides an adhesive quality when it is mixed with water and sprayed onto a receiving material. Spraydon is a less expensive acoustical coating material which has

---

[2] General Laws c. 30, § 39M(*b*), as amended by St. 1967, c. 535, § 5, provides in pertinent part: "Every such contract shall provide that an item equal to that named or described in the said specifications may be furnished; and an item shall be considered equal to the item so named or described if (1) it is at least equal in quality, durability, appearance, strength and design, (2) it will perform at least equally the function imposed by the general design for the public work being contracted for or the material being purchased, and (3) it conforms substantially, even with deviations, to the detailed requirements for the item in the said specifications."

an N.C.R. of 0.50 at 3/8" thickness. It is greyish-white in color and more fibrous and soft than Cafco.

Acmat read and relied upon the specifications in preparing its bid. The figures therein quoted were based upon the assumption that the architect would approve the less expensive Spraydon. Had the figures been based upon the use of Cafco, Acmat's bid would have been over $15,000 more than what it was.

In seeking thereafter the architect's approval of Spraydon, Acmat submitted a Spraydon brochure. The brochure did not indicate the color or hardness of applied Spraydon. In passing upon Acmat's request, the architect used a stamp which allowed for the checking off of various decisions. He placed a checkmark in the "approved" box. The following statement appears beneath the check mark: "Checking is only for conformance with the design concept of the project and compliance with the information given in the contract documents." Some six months later Acmat submitted a sample of Spraydon to the architect. The sample was attached to cardboard or fiberboard and was not in the form required by the specifications. The architect disapproved the use of Spraydon because it did not meet the requirements for "color, hard wear (durability), and/or density." Fault was found with its "greyish color and brittleness."

The trial judge also found as subsidiary facts that: (1) "[a] certain degree of hardness in the interior ceiling coating was desired for durability"; (2) "[t]he whiter a material, the greater is its light reflectance"; (3) "[t]he light reflectance characteristics of the interior ceiling coating was an important factor in the construction design for the School because the areas on which the interior ceiling coating was applied were relatively dark"; (4) "important technical features are usually described in specifications or plans but that not all important criteria are specified"; (5) "the contractor should imply the degree of light reflectance desired from the particular material specified in a contract"; and (6) "[l]ight reflecting data for various products is available in Sweets Catalogue."[3]

---

[3] A witness described Sweets Catalogue as a publication containing data on various products so that "[e]ach competitor knows what the other one has."

Notwithstanding these subsidiary findings, the trial judge made the general finding that "Spraydon substantially conforms to the requirements of the Specifications . . . despite slight deviations from those requirements. Spraydon would perform the function imposed on the material by the general design of the school as well as Cafco would perform with regard to durability, acoustical quality, appearance, strength and design." He concluded that the architect had "erred as matter of law" in interpreting the "or equal" clause in the contract. The trial judge ruled that the architect's decision was arbitrary in that the rejection of Spraydon was based upon its failure to "conform to parameters [*sic*] that were unspecified in the architect's specifications (that is, color and hardness) . . . [and that] Acmat could not be expected to speculate as to what other technical requirements its proposed material should meet in order to satisfy the architect's plans."

The trial judge's subsidiary findings of fact are supported by the record. They are, however, inconsistent with his ultimate findings and conclusions. See *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976). The contract leaves it to the architect to decide whether a proposed material is "of equal substance and function." Even assuming that the architect's power under the contract is broader than that authorized by statute, see note 2, *supra*, the trial judge's subsidiary findings show that the architect's decision was based upon considerations permissible under § 39M(*b*).

Moreover, the architect's approval was not limited to the material description clause of the specifications, which cannot be read to the exclusion of remaining provisions therein contained. "Sections of a construction contract, as of any other kind, ought to be construed to give a reasonable effect to each. *S.D. Shaw & Sons* v. *Joseph Rugo, Inc.*, 343 Mass. 635, 640 (1962)." *John F. Miller Co.* v. *George Fichera Constr. Corp.*, 7 Mass. App. Ct. 494, 499 (1979). Construing the specifications as a whole, we think it clear that even if a proposed material had an N.C.R. of 0.45, or better, at 3/8" thickness, it still had to be approved by the architect

on matters of color, texture, and thickness.[4] To read the specifications otherwise is to view as surplusage the clause which requires a sample to be submitted at the job-site for the architect's approval on those matters.

The decision of the architect is final and binding on the parties where he is given that power by the contract, as here, and where his exercise of that power is not arbitrary and capricious. *Gil-Bern Constr. Corp.* v. *Medford,* 357 Mass. 620, 623 (1970). *John F. Miller Co.* v. *George Fichera Constr. Corp.,* 7 Mass. App. Ct. at 497. G. L. c. 30, § 39J. Compare *Hurley* v. *Boston,* 244 Mass. 466, 471 (1923). There the court, quoting *Palmer* v. *Clark,* 106 Mass. 373, 389 (1871), held that an architect's determination could be set aside where there is a mistake "which shows that he was misled, and so far misapprehended the case that he failed to exercise his judgment upon it."

The trial judge's subsidiary findings of fact show that the architect exercised his judgment and disapproved the use of Spraydon on the basis of permissible factors. The architect's rejection of Spraydon constituted a reasonable exercise of the power conferred upon him by the parties to the contract, and his decision was, therefore, binding and final.

Our conclusion that Acmat must bear the burden of the extra cost of using the more expensive coating material makes it unnecessary for us to consider Acmat's and O'Connell's additional claims, as they are pertinent only in the event of a judgment in Acmat's favor.

2. *O'Connell's Counterclaim Against Acmat.*

There is no dispute that Acmat's applications of Cafco failed. The trial judge found that the primary reason for

---

[4] The architect's initial approval of Spraydon was based upon a review of the brochure only. Nothing in the statement accompanying that approval can be construed as a waiver of the requirement of the architect's approval of a job site sample. Additionally, as Acmat already had submitted its bid on the assumption that Spraydon would be approved, it "elected to run the risk of disapproval," *E.A. Berman Co.* v. *Marlborough,* 11 Mass. App. Ct. 1009 (1981), and Acmat took no action to its detriment in reliance upon the architect's action on the brochure.

the failure was Acmat's application of Cafco to a surface having a temperature of 40° Fahrenheit, or less. Even though O'Connell was responsible for maintaining site conditions, including adequate heat, and failed to do so, the trial judge found that Acmat could and should have stopped work until the temperature was brought to a proper level. He concluded that the city was entitled to recover its costs of repair from O'Connell and that, because Acmat continued to install the coating material under inappropriate conditions rather than halting work, O'Connell could recover the same amount from Acmat.

The trial judge's ultimate finding and conclusion are supported by his subsidiary findings that: (1) Acmat notified O'Connell that if the heating conditions continued to be insufficient for the application of Cafco, Acmat "would probably pull off the job;" (2) O'Connell then informed Acmat that it was the position of the city and architect that if Acmat and O'Connell could not guarantee the application of Cafco due to inadequate temperatures, then Acmat was advised to stop all spraying until the temperature problem was resolved; and (3) Acmat never ceased work because of insufficient heat or other improper conditions. These subsidiary findings are supported by the record. Cf. *Albre Marble & Tile Co.* v. *John Bowen Co.*, 338 Mass. 394, 400 (1959); *Quintin Vespa Co.* v. *Construction Serv. Co.*, 343 Mass. 547, 554 (1962).

3. *The City's Counterclaim.*

On the city's counterclaim for damages because of defective workmanship, the trial judge found that 18,884 square feet of the area to which Cafco had been applied should be replaced. We agree with the city's contention that the trial judge's computation is inaccurate to the extent that it cannot be mathematically reconciled with his subsidiary findings. The amount of damages due the city must be recalculated by the trial judge in accordance with the facts found by him.

4. *Conclusion.*

The judgment is vacated, and the matter is remanded to the Superior Court for a recalculation of the damages due the city and for entry of a new judgment consistent with this opinion.

*So ordered.*