ALBERT A. COBB et al., Respondents, *v.* THE DOLPHIN MANU-
FACTURING COMPANY, Appellant.

Plaintiff agreed to sell and deliver and defendant to purchase 1,000 bales
" Jute Butts " " guaranteed bagging quality." A question having arisen
between the parties as to whether a portion of the goods tendered were
of the specified quality, they entered into a written agreement to submit
the matter to arbitration. The submission stated that as the parties
differed " as to the right of sellers to deliver and the obligation of buyers
to receive" the goods " for the purpose of arriving at a just and equit-
able settlement as to the rights and obligations of the parties under said
contract," it was agreed that arbitrators should be chosen in the manner
specified to " render a decision as to the rights and obligations of the
parties" who bound themselves " to accept and execute the terms and
conditions of the decision." The arbitrators made an award to
the effect that they had examined the " Jute Butts;" that they
did " not consider them of bagging quality, but a high grade
of paper quality," and that " an equitable settlement under the
contract would be an allowance of one-sixteenth of one per cent per
pound to the buyer." Defendant refused to abide by the award, claim-
ing that the sole question submitted was as to defendant's obligation to
receive the goods as a compliance with the contract, and the arbitrators
having found they did not, as to quality, comply therewith that ended
the matter and the balance of the award was unauthorized and invalid.
*Held*, untenable; that the power given " to make a just and equitable
settlement" authorized the arbitrators to look beyond the strict technical
and legal rights and obligations of the parties, and fully justified the
award made.

Also, *held*, the fact that no evidence was given before the arbitrators as to
the value of the jute, did not affect the validity of the award, it appear-
ing that the arbitrators themselves were experts and determined the
question from personal examination.

One of the arbitrators was called as a witness for defendant. He testified
to the receipt of a letter from plaintiffs before making the award, and
was then asked as to whether he would have made the award so far as related
to the deduction if he had not received the letter. This was objected to
and excluded. *Held*, no error.

(Argued January 30, 1888; decided February 28, 1888.)

APPEAL from judgment of the General Term of the Court
of Common Pleas in and for the city and county of New
York in favor of plaintiffs, entered upon an order made

January 13, 1885, which overruled defendant's objections and directed judgment on a verdict directed by the court.

This action was brought to recover damages for an alleged breach of contract on the part of defendant to purchase certain bales of " Jute Butts." The controversy was submitted to arbitrators as stated in the opinion. Upon refusal of the defendant to abide by the award and receive the jute, plaintiffs after notice sold the same and sought to recover the difference between the contract-price, deducting therefrom the allowance made by the arbitrators and the net proceeds of the sale.

*William Henry Arnoux* for appellant. The defendant was not bound to receive the goods in question at any price, the arbitrators having found that they were not the goods purchased. (*Halton* v. *Cave*, 1 B. & A. 538 ; Potter's Dwarris on Statutes, 266, 269.) The submission was as to the obligation to take, and gave no authority to make a deduction. (*Hobson* v. *Doolittle*, 13 Conn. 36.) It was error to exclude the evidence of the arbitrator to explain the award made. Extrinsic evidence is admissible to enable the court to put itself in the place of the arbitrators, more fully to comprehend the situation and intent of the parties. (*Field* v. *Munson*, 47 N. Y. 221 ; *Collender* v. *Dinsmore*, 55 id. 200 ; *Heffield* v. *Meadows*, L. R. 4 C. P. 595 ; *Knapp* v. *Warner*, 57 N. Y. 668 ; *White's Bank* v. *Myles*, 73 id. 335 ; *Brill* v. *Tuttle*, 81 id. 460 ; *Grierson* v. *Mason*, 60 id. 394 ; *Juliard* v. *Chaffee*, 92 id. 529 ; *Halstead* v. *Seaman*, 82 id. 27 ; Morse on Awards, 62.) Arbitrators are bound by the terms of the submission, and any award they may in terms make beyond the controversy submitted is a nullity, although the award is good so far as it decides the matter. (*Scott* v. *Barnes*, 7 Barr. 134 ; *Saville St. Foundry Co.* v. *Rothesay Tramway Co.*, 10 C. of I. Cases, 821 ; *Heyworth* v. *Hutchinson*, L. R. 2 Q. B. 447.)

*Austen G. Fox* for respondents. The award was within the terms of the submission as matter of law. (*Heyworth* v.

*Hutchinson*, L. R. 2 Q. B. 447; *Thorburn* v. *Barnes*, L. R. 2 C. P. 384; Morse on Arbitration and Award 342; *Forwood* v. *Watney*, 49 L. J. [N. S.] 447; *Pollock* v. *Sutherlin*, 25 Gratt. 78, 96; *Ford* v. *Burleigh*, 60 N. H. 278; West's Symboleography [2d part], 164.) The letter of the plaintiffs written to the arbitrators did not affect the validity of the award, and is of no avail to show that the arbitrators exceeded their jurisdiction. (*Halstead* v. *Seaman*, 82 N. Y. 27, 31; *Wood* v. *A. & R. R. Co.*, 8 id. 160, 168; Morse on Arbitration and Award, 345, 346; *Hutcheson* v. *Eaton*, 13 Q. B. D. 801, 807; *Perkins* v. *Giles*, 50 N. Y. 228.) The award can operate as a bar only as to the questions submitted, and if the liability to take the goods at a reduced price was not submitted, then the award on that question does not bar an action for the price. (Morse on Arbitration and Award, 505; *Hopson* v. *Doolittle*, 13 Conn. 236; *Morton* v. *Cameron*, 3 Robt. 189; *Hutcheson* v. *Eaton,* 13 Q. B. D. 861.) The contract of sale was entire. The defendant by accepting and retaining 400 bales of the single lot of 1,000 bales, with full opportunity to inspect them, was bound to accept and pay for the whole lot. (*Shields* v. *Pette*, 2 Sandf. 262; *Reed* v. *Randall*, 29 N. Y. 358, 366; *Lyon* v. *Bertram*, 20 How. [U. S.] 149; *Mansfield* v. *Baker*, 113 Mass. 350; *Morse* v. *Brackett*, 104 id. 494; S. C. 98 Mass. 205; *Couston* v. *Chapman*, L. R. Scotch App. 250; Benj'n on Sales [4th Am. ed.] § 426.)

Peckham, J. On the 13th of April, 1880, the parties to this action entered into a contract in relation to certain bales of jute butts, by which the plaintiffs agreed to sell and the defendant agreed to purchase "1,000 bales guaranteed bagging quality, per Knight Commander, at $(3\frac{7}{16})$ three seven sixteenths cents per pound, actual gross weight, duty paid, cash." Also "1,000 bales merchantable quality, per Knight Commander." In the same contract were agreements to sell and purchase various other bales of jute from other ships and

at other prices. The only question in this case, however, arises in regard to the 1,000 bales of guaranteed bagging quality per " Knight Commander."

When the vessel arrived the 1,000 bales of merchantable quality, it would seem, were received and delivered and were satisfactory, at any rate no question arises as to them. Of the contract for the sale and purchase of the 1,000 bales of guaranteed bagging quality, 400 bales were delivered to and received by the defendant as a fulfillment *pro tanto* of the contract in question. The balance of 600 bales was offered by plaintiffs and refused by defendant on the ground that the same did not comply with the terms of the contract. The plaintiffs claimed that they did, and that the defendant was bound to receive and pay for them at the contract-price.

In this condition of things the parties entered into an agreement to submit their differences to arbitration, and the terms of the submission were as follows : " Whereas the undersigned, Dolphin Manfg. Co., of Patterson, N. J., and Albert A. Cobb & Co., of Boston, Mass., entertain difference of opinion as to the right of sellers to deliver, and the obligation of buyers to receive, 600 bales of jute butts, marked J. C., under sale contract made by G. Tuckerman, broker, dated April 13, 1880. Now, for the purpose of arriving at a just and equitable settlement as to the rights and obligations of said parties under said contract, the said Dolphin Mfg. Co., and the said A. A. Cobb & Co., hereby mutually agree, within three days from this date, each to choose and appoint one disinterested party who shall act together as referees. Should the two referees so chosen fail to agree, the said two referees shall choose a third party to act with them, and render a decision as to the rights and obligations of the undersigned under the before named contract. Said decision to be made and communicated to the undersigned within ten days from this date. The undersigned hereby agree to promptly accept and execute the terms and conditions of the decision that said referees or either of them shall make. Should said Dolphin Mfg. Co. fail to choose a referee as above, within said three days, said company agrees to receive and

pay for the said 600 bales jute butts at the price named in the contract. Should said Cobb & Co. fail to choose a referee as above, within said three days, said Cobb & Co. agree to abandon all right to make delivery to said Dolphin Mfg. Co. of said 600 bales of jute butts."

Upon that submission the arbitrators made an award which is as follows: "In accordance with instructions from Messrs. A. A. Cobb & Co., of Boston, and the Dolphin Mfg. Co., of New York, we, the undersigned, have examined six hundred (600) bales jute butts marked red J. C., at Wall st. stores, Brooklyn, ex-ship *Knight Commander*, and decide that an equitable settlement under the contract would be an allowance of one-sixteenth ($\frac{1}{16}$) of a cent per pound to the buyer. We do not consider them of bagging quality, but a high grade of paper quality."

When that award was made the defendant refused to abide by it on the ground, as it alleged, that no such power was contained in the submission to the arbitrators; that the sole question submitted to them was whether the defendant was bound to receive the 600 bales of jute in question as a compliance with the contract, and that question depended upon the fact as to whether the 600 bales did or did not comply with the guaranteed quality; that as the arbitrators found that the jute did not comply with the terms of the contract as to quality, that was an end of the question so far as they were concerned, and they had no right to go further and order the defendant to pay for jute which was not up to the quality contracted for. An examination of the whole case shows, as we think, that the contention of the defendant as to what was submitted to the arbitrators is not well founded.

The defendant, I think, loses sight of the language of the submission that it is made for the purpose of arriving at a just and equitable settlement as to the rights and obligations of the parties under the contract. It is too narrow a view of the purpose to say that it is strictly confined to the question whether there was a right of the sellers to deliver and an obligation of the buyer to receive these goods. This construction gives no

weight whatever to the words "just and equitable settlement." The submission is, I think, to be regarded as one relating to the rights and obligations of the parties under the contract, but the decision regarding such rights and obligations is to be a just and equitable one under all the circumstances of the case. This provision must be held as of some force, and in order to give to it the proper force it must be held to qualify those rights and obligations so that a decision as to them shall be subject to the qualification that it shall be just and equitable. Thus construed the decision is, under all the circumstances, to be a just and equitable one, and the strict technical and legal rights and obligations of the parties under the contract are to be varied in accordance with the expressed purpose of the submission and in obedience to just and equitable principles. Construing the submission in this way we think it fully justifies the award. We have looked at the various cases cited by the learned counsel for the defendant and we find none which runs counter to this view of the extent of the submission.

Considerable stress was laid on the argument upon the fact that there was no evidence given before the arbitrators in regard to the value of this jute, which it is claimed would naturally have been given in case it was supposed that the arbitrators were to have power to make a reduction in the price of the jute, while decreeing an acceptance of it on the part of the defendant. But it would appear from the case and from the award of the arbitrators that they were men who were judges of the article in question, and who were to see the jute in dispute for the purpose of determining the question whether or not it came up to the standard of quality called for in the contract. This naturally explains why no evidence was given before the arbitrators as to the value of the jute in question.

Upon the trial Mr. Ray, one of the arbitrators, was called as a witness for the defendant, and testified that the other arbitrator was dead. This question was then put to Mr. Ray: "Did you make the award of a deduction before receiving the letter from Cobb & Co.?" which he answered by saying

that he did not.   He was then asked : " Would you have made the award, in so far as you made the deduction of this award, if you had not received the letter from Cobb & Co. ?" Under plaintiff's objection that the question was irrelevant it was excluded, and defendant excepted.

It is now claimed that the learned trial justice erred in excluding this evidence, on the ground that extrinsic evidence is admissible to enable the court to put itself in the place of the arbitrators, whereby it can fully comprehend the intention and situation of the parties.   Various cases are cited by the learned counsel for the purpose of showing that where writings are not entirely intelligible and unambiguous, parol evidence may be given of the situation of the parties at the time the contract was entered into, so that the court, by being placed in their situation, may, from knowledge thus acquired, derive ability the more properly to construe the writings.

There is no doubt about such a principle, but we do not see that it has the least application to this case.   If the writing were ambiguous, all the facts that surrounded the parties at the time when this submission was entered into, and which would properly give color or construction to the submission itself, would have been admissible in evidence for the purpose mentioned.   Here the writing is not, as we think, at all ambiguous, and if it were, the evidence offered was simply a proposition to call for what would have been the act of a party if something had not occurred that as matter of fact did occur.   In other words, a mere hypothesis is presented, and the opinion of the witness is asked as to what his action would have been in such a case.   This was clearly inadmissible.

Under all the circumstances we think the judgment was right, and should be affirmed, with costs.

All concur, except ANDREWS, J., not voting.

Judgment affirmed.