(67 App. Div. 158.)

### WURSTER et al. v. ARMFIELD.

(Supreme Court, Appellate Division, Second Department. December 23, 1901.)

1. LANDLORD AND TENANT—LEASE—RENEWAL PROVISION—SPECIFIC PERFORMANCE—MENTAL INCAPACITY OF LANDLORD.

Defendant's grantor leased certain lots to plaintiffs by a lease which provided that plaintiffs might elect to have a renewal, and fixed all the terms of the renewal except the rent, which, if not otherwise agreed on, was to be 5 per cent. of the value of the lots on a specified date, and further fixed in detail the manner of establishing such value by appraisal by third parties. *Held*, that the fact that defendant was mentally incapable of making any contract when the time for renewal arrived was no defense to an action for specific performance of the covenant to renew, the rent having been established in the manner agreed on.

2. SAME—LEASE—CONSTRUCTION—VALUATION OF PREMISES—APPRAISAL—PROCEEDINGS.

A lease, in providing for a renewal if the lessees should so desire, fixed the terms of the renewal except the rent, which was fixed at 5 per cent. of the value of the property, such value to be determined as follows: Each party to select a person of certain specified qualifications, and, if these two could not agree on the value, they were empowered to select a third of like qualifications, and a decision of the majority should be final, except that, if no two should agree, the average of their estimates should prevail. *Held*, that the lease contemplated an appraisal, rather than a submission to arbitration under Code Civ. Proc. § 2366, providing that two or more persons may, by written instrument, duly authenticated, submit to arbitration any controversy existing between them at the time of the submission which might be the subject of an action, since the abstract value of land could not be the subject of an action; nor was there any controversy at the time the agreement was made; and hence the proceedings on the appraisal were not governed by the Code provisions as to hearing, oath of arbitrators, notice, etc., in regard to arbitrations.

Sewell, J., dissenting.

Appeal from special term, Kings county.

Action by Frederick W. Wurster and another, composing the firm of Frederick W. Wurster & Co., against William W. Armfield. From a judgment in favor of plaintiffs, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

Ira Leo Bamberger, for appellant.
Joseph A. Burr, for respondents.

WOODWARD, J. In November, 1889, one Mary Rebecca Armfield, who was the owner of certain premises described in the complaint, executed and delivered to the plaintiffs a lease of three lots of ground situated on the easterly side of Kent avenue, in the then city of Brooklyn, about 92 feet and 4 inches from Broadway. This

lease was for a term of 10 years, and it provided that the plaintiffs should "be entitled to a further demise of said premises for an additional term of ten years, to commence upon the termination of the foregoing lease: provided, they shall not be in default in the performance of any of the covenants and agreements on their part in this lease contained, and the first demised term shall not be terminated or ended before the first day of November, one thousand eight hundred and ninety-nine, and provided that they shall notify the party of the first part in, writing of their intention and desire to take such lease between the first day of May and the first day of August in said last-mentioned year: and also provided that there shall be at the end of said demise term standing upon said demised premises a building or buildings erected thereon by the parties of the second part at their own expense of the value of at least three thousand dollars; and, in case they shall thus become entitled to and request such further demise, then in such case the parties hereto shall, on or before October 15, 1899, enter into a written agreement of lease therefor, and the rental for said additional demised term shall, if not otherwise mutually agreed upon, be five per centum per annum on the value of the lots hereby demised on the first day of August, 1899 (but not including therein the value of any buildings thereon); and in case such value cannot be agreed upon between the said parties before September 1st, 1899, then such value shall be determined upon by two disinterested, competent then owners of real estate in the immediate vicinity of said demised property, or real estate agents or brokers well versed in the values of such property in such vicinity, one of whom shall be chosen by each of the parties hereto, and their decision thereon shall be final; but, should they be unable to agree, they shall choose a third person of like competency, and the decision of the majority of the three shall be final, except that, should no two of them agree, then the average of the values determined upon by the three shall be accepted. The selection and determination by the arbitrators shall be made on or before October 10, 1899, and in case either party shall fail to select an arbitrator and notify the other thereof before October 1, 1899, the other party may select a sole arbitrator of the same competency as above provided for, who shall determine the valuation. * * * And it is expressly agreed and provided that, in case said additional demise shall be made, then all buildings and permanent improvements on said lots shall belong to. the party of the first part, and shall not be removed without her written consent." By a prior clause in the agreement, relating to the first period of 10 years, it was provided that the "parties of the second part may, and upon the request of the party of the first part shall, remove all buildings and other erections that may be put upon said premises before the expiration of the aforesaid demised term, at their own expense; provided that the lease is not renewed as hereinafter provided." Subsequent to the execution and delivery of the lease above mentioned, Mary Rebecca Armfield conveyed the premises involved in this controversy to William A. Armfield, her husband, and it can hardly be questioned that he is bound by the provision of the lease

that "it is further understood and agreed that the covenants and agreements contained in the foregoing lease are binding on the parties hereto, and their legal representatives, except as otherwise expressly hereinabove provided to the contrary." The complaint alleges all of the facts necessary to entitle the plaintiffs to a specific performance of the contract, and the evidence is sufficient to warrant the conclusion that the building erected upon the demised premises, and which will become the property of the defendant at the end of the second term, is worth at least twice the amount specified in the lease. The evidence supports the allegations of the complaint, and the learned court at special term has decreed that the defendant shall execute the lease as provided in the contract, the latter having refused to comply with its terms. From the judgment entered appeal comes to this court.

In the learned and scholarly brief of the appellant we are treated to a discussion of the law, the principles of which cannot be successfully controverted at this day; but for the most part we are unable to discover a relationship to the facts of this case which would bring it within the limits of judicial consanguinity. For instance, counsel devotes some 15 pages of his brief to the proposition that a person may plead that he was non compos mentis in avoidance of his contract. Undoubtedly, the fact that a person was incompetent to make a contract, either by reason of his infancy, lunacy, or other lawful inability, may be pleaded; but there is no suggestion that in this case the person making the contract in question was incompetent in any particular. The contract was made by the defendant's grantor, and the parties fully performed under that contract for a period of 10 years, during which time the plaintiffs had not only paid the rents reserved, the taxes, water rates, etc., but they had erected a building upon the premises valued at $7,000, which was to become the property of the defendant at the expiration of the 10 years from the date of the second lease provided for in the original agreement. The fact that the present defendant may have been incapable of making a contract at the time the original lease expired has nothing to do with the question. The plaintiffs had fully performed their contract, entitling them to a renewal of the lease. They had made an investment larger than that contemplated in the original lease upon the strength of their contract for a renewal for a period of 10 years, and it would be most inequitable to compel them to take down this building, as provided for, at the end of the first term, or to give the defendant the benefit of this investment. The original lease fixed all of the term for the renewal. The plaintiffs, by reason of their performance of the conditions, had a vested right to the performance of the contract on the part of the defendant. The only question which was left open for adjustment was the value of the lots, independent of the buildings erected thereon; and the method of determining this fact was set forth in detail, amounting to an appraisal, rather than an arbitration. The plaintiffs were to pay a rental of 5 per cent. upon the value of the lots without the buildings, and the terms of the agreement indicate fully that it was contemplated that

each party should select from among the persons of their acquaintance within the classes specified a personal representative, and, if these failed to agree, then the two so chosen were empowered to select a third, and a decision of a majority of the three was to be final, except that, if no two agreed, then the average of the three estimates was to prevail. We do not find that this exact question has ever been presented in this state, but in Illinois the courts have held that where, in a written lease, there is an agreement for a renewal, and to pay as rent for such renewal term a certain percentage upon the cash value of the premises, to be determined by appraisers, it does not constitute a submission to arbitration. The appraisal will be conclusive unless fraudulent, and the parties are not entitled to a hearing. Norton v. Gale, 95 Ill. 533, 35 Am. Rep. 173; 2 Am. & Eng. Enc. Law, 554, note 1. So it was held by the courts of California that where a contract contains a provision for the purchase of property at a valuation to be determined by the appraisement of third parties, it does not constitute an agreement for submission to arbitration, and the persons making the valuation are not subject to the rules governing arbitration. They may make their decision without being sworn, without giving notice to the parties affected, and without giving them an opportunity of being heard, unless such notice and hearing are required by express provisions of the contract or by reasonable implication. California Annual Conference v. Seitz, 74 Cal. 287, 15 Pac. 839. In Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276, 15 Am. St. Rep. 376, the contract under consideration provided:

"And it is further mutually agreed, with a view of preventing disputes and misunderstandings, and for the speedy adjustment of such as may occur, that the engineer in chief shall determine the amount and quantity of work herein contracted to be done, and shall decide every question which can or may arise relative to the execution of the work under this contract on the part of said contractors; and his decision shall be final and conclusive."

It was also provided that, if any differences of opinion arose as to the construction of the contract, they should be submitted to the same person. The contractors put in a claim and brought an action to recover for extra work. The trial court found that the chief engineer inserted the quantities in his final estimate without personally measuring, and that he declined to permit the plaintiffs to contradict by any witness the statements made to him by subordinate engineers, and thereupon made such final estimate. It appeared that the estimates were made from actual surveys and measurements by subordinate engineers in the presence of plaintiffs' foreman. Judgment was rendered for the amount the court found unpaid for work in excess of that allowed. This was held error; that the contract did not contemplate that the chief engineer should personally measure or superintend the measurements, but that he was to rely upon the reports of his subordinates; that it was not his duty to hear evidence, but the contract clothed him with power of summary computation; that he had the general powers and duties of an arbitrator; and that, in the absence of any claim of fraud, corruption, or bad faith, or of a palpable mistake appearing upon

the face of the estimate, it was final, and the court had no power to supervise it. See Cobb v. Manufacturing Co., 108 N. Y. 463, 468, 15 N. E. 438. The plaintiffs had equitable rights arising under the original lease, and they have complied with all of the conditions named in that contract. The mere fact that the grantee of the original lessor may have been unable, through progressive paresis or insanity, to enter upon a new contract in 1899, cannot be permitted to defeat the rights of the plaintiffs. The appraisers were appointed in the manner pointed out by the original contract. There is no allegation of fraud or collusion on their part, and the person acting in behalf of the defendant was chosen at a meeting of an old friend of the defendant, the defendant himself and his wife, the latter of whom was the original lessor; and the only concededly erroneous estimate of the value of the premises was that made by the arbitrator selected on behalf of the defendant. This man placed the valuation at $36,000, while the defendant's counsel is content to urge that the evidence would support a conclusion that it was worth $18,000. The value fixed by a majority of the appraisers was $11,500, and, assuming that we are at liberty to consider the evidence, it cannot be said that this figure was so wholly unreasonable as to justify a conclusion that it does not do substantial justice, particularly when it is considered that a valuable building, erected at the expense of the plaintiffs, is to become the property of the defendant at the close of a second term.

We are of the opinion that the original contract did not contemplate a formal arbitration, or that notice should be given of the meeting of such appraisers as were provided for in the lease. The contract provides for the selection of a representative of either side, to be chosen from men who were familiar with the values of real estate in the particular locality. A fair reading of the instrument indicates that it was the intention of the parties to select men who were judges of values, and this explains why it was not necessary to give any evidence before the appraisers as to the value of the premises in question. Cobb v. Manufacturing Co., supra. As was said in Palmer v. Clark, 106 Mass. 373, 389:

"A reference to a third person to fix by his judgment the price, quantity, or quality of material, to make an appraisement of property, and the like, especially when such reference is one of the stipulations of a contract founded on other and good considerations, differs in many respects from an ordinary submission to arbitration. It is not revocable. The decision may be made without notice to or hearing of the parties, unless such notice and hearing be required by express provision or reasonable implication; and it may be made upon such principles as the person agreed on may see fit honestly to adopt, or upon such evidence as he may choose to receive. * * * In one important respect it is to be treated precisely like an award under a submission to arbitration. It cannot be impeached for mistake arising from error in the judgment of the referee, or in drawing conclusions from evidence and observation. To avoid it, the mistake must be one which shows that he was misled, and so far misapprehended the case that he failed to exercise his judgment upon it; as where he is imposed upon by false measures or false weights, or there is obvious error in figures."

See cases cited. Also, Robbins v. Clark, 129 Mass. 145; 2 Am. & Eng. Enc. Law, 554, note 1.

If we are right in this position, it follows that the appraisal made under the provisions of the contract of lease is not governed by the provisions of sections 2365–2367 of the Code of Civil Procedure; and all of the points of the appellant based upon the provisions of the Code of Civil Procedure are without force. The language of section 2366 of the Code clearly indicates that it has no reference to appraisers appointed by contract to determine a specific fact, as in the case at bar; for it provides that "two or more persons may, by an instrument in writing, duly acknowledged or proved, and certified, in like manner as a deed to be recorded, submit, to the arbitration of one or more arbitrators, any controversy, existing between them at the time of the submission, which might be the subject of an action." The abstract question of the value of two lots could not be the subject of an action. There was no controversy existing between the parties to the original lease at the time of making the agreement to submit the question of such value to appraisers, and the whole matter is merely a question of contract between the parties, with which the provisions of the Code of Civil Procedure have nothing to do.

The judgment appealed from should be affirmed, with costs.

GOODRICH, P. J., and BARTLETT, J., concur; HIRSCH-BERG, J., in result. SEWELL, J., dissents.