WELCH et al. v. PROBST et al.

(Supreme Court, Appellate Division, Fourth Department. May 1, 1912.)

1. ARBITRATION AND AWARD (§ 37*)—RIGHT OF ARBITRATORS—SELECTION OF UMPIRE.

    A buyer and seller made an agreement to arbitrate a disagreement between them in the light of the custom of the trade to arbitrate, but without specifically directing the arbitrators to select an umpire. The parties understood that, when the arbitrators appointed by them did not agree, they could appoint a third person. *Held*, that the arbitrators on

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

disagreeing could appoint an umpire, and a decision of the arbitrators and umpire was binding on the parties.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 193; Dec. Dig. § 37.*]

2. ARBITRATION AND AWARD (§§ 32, 31*)—RIGHT OF ARBITRATORS—HEARING AND NOTICE.

Where, according to the custom of the trade known to a buyer and seller agreeing to arbitrate their differences, the arbitrators, when experienced men in the business, did not summon the parties nor give any notice, but made an inspection and examination themselves without evidence, and determined the controversy in a summary way, an arbitration by experienced men made pursuant to such procedure will be sustained.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. §§ 165–170, 156–164; Dec. Dig. §§ 32, 31.*]

3. ARBITRATION AND AWARD (§ 20*)—SUBMISSION—SCOPE.

A seller of apple "chops" was notified by the buyer that a car was rejected because it did not comply with the contract, and was also informed that a second car had not arrived, and would not be sampled if of the same quality. The buyer expressed his willingness to submit the issue to arbitration, and the seller notified the buyer that he had concluded to arbitrate the second car, and establish a grade of prime, and, should the car be decided not prime, the seller would tender other goods, or the buyer could settle the market difference. Arbitrators were appointed, and they examined both cars, and decided that they did not comply with the contract. Held, that the arbitration was conclusive on the seller as to both cars.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. §§ 87–96; Dec. Dig. § 20.*]

McLennan, P. J., dissenting.

Appeal from Trial Term, Wayne County.

Action by Joseph J. Welch and another against Arthur O. Probst and another. From a judgment for plaintiffs, defendants appeal. Reversed and new trial ordered.

The following is the opinion of Foote, J., at the Trial Term:

At the close of the trial defendants' counsel moved for the direction of a verdict for defendants. Decision of this motion was reserved by consent of counsel and in accordance with section 1187 of the Code of Civil Procedure, and a single question of fact was submitted to the jury as to whether the apple chop which was the subject of the action was of the grade and quality specified in the contract between the parties. The jury answered this question in the affirmative, and I am now called upon to "direct such general verdict as either party may be entitled to," as provided by section 1187 of the Code. The answer of the jury to the question submitted requires a verdict in favor of the plaintiffs for the contract price of the apple chop, unless the award of the arbitrators is binding upon the parties. I have come to the conclusion that it is not binding upon plaintiffs, for the reason that there was nothing in the agreement for arbitration authorizing the selection of an umpire or third arbitrator in case the two arbitrators selected by the parties failed to agree. They did fail to agree in respect to the one car of apple chop as to which the plaintiffs had agreed to arbitrate, and, without the knowledge or consent of plaintiffs, they called in an umpire or third arbitrator, who agreed with the defendants' arbitrator, and thus only was the award made in defendants' favor.

In Morse on Arbitration and Award, p. 245, it is said: "Arbitrators have no inherent power to call in an umpire. They must be in terms authorized so to do by the submission. The umpire called in by them without specific authority would be endowed with no power whatsoever in relation to the par-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ties or the subject-matter of the controversy, and his award would be a mere nullity." I find no authority and am referred to none to the contrary of the rule here laid down.

It must be held, therefore, that the award brought about by the intervention of the umpire is a nullity, and that the plaintiffs are entitled to a verdict for the amount of the contract price of the apple chop in question.

The order to be entered hereon will be settled upon two days' notice.

Argued before McLENNAN, P. J., and SPRING, KRUSE, and ROBSON, JJ.

Robert B. Honeyman, of New York City, for appellants.
E. W. Hamn, of Lyons, for respondents.

SPRING, J. The plaintiffs resided in Wayne county, and had long been engaged in shipping apples and produce to the city of New York, and prior to the transactions in question had made sales to the defendants, who were dealers in produce in New York City. The plaintiffs knew of the custom of the trade in New York City in regard to arbitrations in case of a disagreement between a buyer and a seller. On the 16th of January, 1906, the defendants ordered of the plaintiffs "two cars of heavy packed prime chopped apples," which order was accepted by wire by the plaintiff on the following day. Car No. 40547, containing 125 barrels of "chops," was shipped in pursuance of this order on the 20th of February, 1906, and arrived in New York on the 28th, and was promptly inspected by the defendants, and rejected on the ground that the apples were not prime, and therefore did not correspond in quality to those purchased, and immediately notified the plaintiffs of their rejection, and that letter contained the following:

"Car No. 40422 has not yet arrived, but if these are of the same quality as Car No. 40547, we will not even go to the expense of sampling the same, as we absolutely refuse to accept goods of this kind."

On the 6th of March the plaintiffs wrote to the defendants that, unless they heard from them by Wednesday following, the goods would be sold in the open market. The defendants replied by letter bearing date the same date, referring to their preceding letter, stating that they were willing to submit the matter to arbitration "as per terms of sale, and if the arbitrators should decide that the goods are prime we, of course, will accept them." In the letter they also advised the plaintiffs that the other car had arrived and was not prime, and they rejected the same. On the 12th of March the plaintiffs wrote to the defendants that they "had concluded to arbitrate car N. Y. C. 40422 and establish a grade of prime. Should this car be decided not prime, we will either tender you other goods or you can settle with us at market difference. Paul Haebler will act as our arbitrator and I have instructed him to have samples drawn and notify you as soon as he has them. You might also call him up to-morrow and see if he has the samples ready." The plaintiffs thereupon appointed Mr. Haebler, a dealer in produce and apples, as their arbitrator, and the defendants Mr. Martin, also an expert in the business. These arbitrators met immediately, obtained samples of the apples from the

official sampler of apples in car 40547, and signed a written decision to the effect that they had examined the samples of that car, and "that same is not a good delivery on contract calling for prime bleached chops crop 1905," and the defendants immediately notified the plaintiffs of this decision. On the following day the plaintiffs replied, stating that they had not agreed to arbitrate the apples in car No. 40547 and had no notice of this arbitration. This letter contained the following:

"We note car No. 40422 will be arbitrated to-day, which is according to agreement. Now should this car fail to meet the standard of quality, you will please write us at once the lowest basis you will make a cash settlement on."

The same arbitrators inspected this car of apples and did not agree, and they selected as an umpire another disinterested man engaged in that business, and the three of them examined the samples from this lot, and all joined in a decision to the effect that they were not a good delivery, calling for "prime bleached chops crop 1905," and the plaintiffs were promptly apprised of this decision. In answering they declined to recognize it and sold the goods in the market, and they have recovered damages for both car lots of the apples.

At the close of the evidence the defendants' counsel moved for the direction of a verdict on the ground that the arbitration award was a bar. The court, by the consent of the parties, held this under advisement, and submitted to the jury the question whether the apples were prime, and the jury found a verdict in favor of the plaintiffs. Later the trial justice held that the arbitration agreement was invalid, and that there was nothing in the agreement authorizing the selection of an umpire, or third arbitrator, and that the plaintiffs were entitled to the benefit of the verdict in their favor.

[1] The agreement to arbitrate was made in the light of the custom which prevailed in New York City. Both parties understood this thoroughly. The plaintiff Thomas B. Welch, after testifying that Paul Haebler was the man selected to represent the plaintiffs in the arbitration, added:

"The practice is that when the arbitrators are selected to get samples from the official sampler—I think it was Kuhlman in this case—they get a sample entirely separate from any samples the purchaser had. After it has been decided they shall arbitrate, each instructs their man to draw a sample or two samples. They are submitted to two, and, if they fail to agree, a third man is called in.

"Q. But in this particular case I see there are only two, and, if the two arbitrators did agree, that obviated calling in the third one? A. Oh, yes; I expect so.

"Q. And, when they make their decision upon the samples, that is accepted by the parties usually, is it, as binding? A. It depends on whether they consider they have had fair treatment or not.

"Q. You accept an arbitration according to whether you come out ahead or not? A. It depends on the parties who arbitrate, some of them."

And further, he was asked:

"Q. Were you to appoint an arbitrator and the two arbitrators to appoint a third? A. When they failed to agree."

I think, therefore, although there was no specific direction in the letters in which we find a somewhat informal arrangement for arbitra-

tion for the selection of an umpire or third arbitrator, that it was the expectation of the parties that such was to be the course pursued, and that the two arbitrators did not exceed their authority in making this selection.

[2] Again, the evidence shows that the manner in which arbitrations of this kind are conducted was for the arbitrators when they were experienced men in the business not to summon the parties before them or give any notice, but to make the inspection and examination themselves without any evidence and dispose of the question submitted in a somewhat summary way, and this method of procedure has been sustained. Cobb et al. v. Dolphin Mfg. Co., 108 N. Y. 463, 15 N. E. 438. The court in that case in disposing of a like objection used this language at page 468 of 108 N. Y., and at page 441 of 15 N. E.:

"But it would appear from the case and from award of the arbitrators that they were men who were judges of the article in question, and who were to see the juts in dispute for the purpose of determining the question whether or not it came up to the standard of quality called for in the contract. This naturally explains why no evidence was given before the arbitrators as to the value of the juts in question."

See, also, Wiberly v. Matthews, 91 N. Y. 648.

[3] Again, it seems to me that it was the expectation of the plaintiffs whichever lot of apples was submitted to the arbitrators their determination was to be decisive as to the condition of both car lots. Their letters so indicate. It is the policy of the courts to encourage and uphold arbitrations, as they are an inexpensive, simple, and expeditious method of adjusting controversies, and tend to prevent litigation. Fudickar v. Guardian Mutual Life Ins. Co., 62 N. Y. 392.

I think the judgment should be reversed.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide event. All concur, except McLENNAN, P. J., who dissents on opinion of justice below; and FOOTE, J., not sitting.